## Collington v. Bureau of State Lotteries

*Donald I. Shrager,* for plaintiff.
*Robert J. Donahoe,* for defendant.

DOYLE, *J.*, January 6, 1981—The taught tradition of the Commonwealth is that the judicial system may not be used to recover gambling debts.

Until recently, such aleatory contracts were officially disdained. See Act of April 22, 1794, 3 Sm.L. 177, sec. 8, 12 P.S. §1671; Act of March 31, 1860, P.L. 382, sec. 52, 18 P.S. §1561 (now repealed); Restatement, Contracts, §520 (relating to wagers) and Pennsylvania annotations; Sum. Pa. Jur., Contracts §272. However, over the years few have adversely commented on, much less condemned, the irreverent Roman Centurians who on the first Good Friday publicly cast lots for a certain garment. And for some time now, law enforcement officials have been accused of winking at such non-contact indoor sports as "bingo." Harness racing and flat-racing, with their attendant at-track wagering, have been officially approved. Finally, the General Assembly created the State Lottery.

Opponents of the lottery were assuaged and the whole affair was made palatable to them by a sanitizing process which included sprinkling legislative holy water on the statute creating the lottery by labelling it an act for the support of impecunious senior citizens. The "sin" was thus concealed and, of course, no penance was appropriate. The recited euphemistic approach was borrowed from the sainted Irish who, of course, officially interdict off-track "book-making" but do permit "Turf Accountants" to practice the art.

Thus, the Commonwealth in this year Anno Domini not only tolerates gambling, it openly advocates and encourages it, with the proviso that the Commonwealth must have a monopoly; the barber who accepts wagers for his private enterprise "bookmaker" is prosecuted, but the publican who operates a nearby saloon and who sells *state* lottery tickets is compensated by the Commonwealth, the publican receiving five percent of the amount of

money wagered with him. Gambling, the creating of a risk for the purpose of assuming it, is no longer interdicted if the state is indirectly involved by taxing it or is directly involved by operating the game. Under such circumstances we cannot hold that the services of the judicial system are not available to enforce gambling debts where the Commonwealth is a party.

At 1:00 p.m. on Thursday, September 13, 1979, plaintiff purchased five $1.00 Pennsylvania State Lottery tickets on number 680. Plaintiff purchased the tickets at Hill Pharmacy, Inc. (Hill) (defendant), whose employe, Beverly Robinson (Robinson), delivered the tickets to plaintiff. The winning number drawn on September 13, 1979 was 680; the winning number drawn for Friday, September 14, 1979 was 647. The lottery tickets held by plaintiff on number 680 show an issue date of (Friday) September 14, 1979. Plaintiff presented her lottery tickets to Hill and demanded $500.00 for each ticket bearing number 680. Hill refused to pay on the ground that 647 was the winning number for tickets bearing the date of September 14. Plaintiff sued the Bureau of State Lotteries, Department of Revenue, Commonwealth of Pennsylvania and Hill in trespass and assumpsit. Judge Wettick dismissed the actions as to all parties except Hill.

Hill is an agent of the Commonwealth for the sale of lottery tickets and for the redemption of tickets bearing the winning number on the date of issue stamped on the ticket. Hill is a mere emanuensis of a disclosed principal; ergo, if anyone is contractually bound to plaintiff, it is the principal (the Commonwealth) and not the agent (Hill). However, the court of common pleas lacks jurisdiction to hear

and determine ex contractu claims against the Commonwealth. The board of claims adjudicates such matters. See 42 Pa.C.S.A. §761(a). Ergo, the assumpsit action must be dismissed as to Hill.

Plaintiff also asserts a claim ex delicto against Hill on the theory that Hill's agent, Robinson, was negligent. The electronically operated console supplied by the Commonwealth to Hill, et al., contains a series of keys, each bearing a number from zero to nine; keys for the days of the week for which the customer wishes to purchase a ticket; keys for the amount wagered by the customer and a key marked "Tomorrow," which when pressed, issues a ticket for the number played bearing a date which is the day after the ticket is purchased. When a customer purchases a ticket to wager on a number which the customer hopes will be drawn on the same day—no special key is pushed, the date of purchase is stamped automatically on the ticket issued. Plaintiff contends that although she sought to purchase tickets for number 680 on September 13th, Robinson erroneously punched the "Tomorrow" key.

The testimony was conflicting as to: (1) whether Robinson activated the "Tomorrow" key, (2) whether plaintiff had requested five tickets to be dated September 14th, (3) the order in which the ten tickets were purchased (which plaintiff sought to prove by red colored lines, indicating the end of the roll of paper tape on which the tickets are printed).

The brochure published by the Commonwealth and distributed by Hill contains (in multi-colored print): "Q: What if a retailer sells me an incorrect ticket? A: You are responsible for the accuracy of

your ticket. No corrections can be made after the drawing." Plaintiff has been a daily lottery ticket buyer for more than five years and knew the contents of the brochure.

The machine which creates the lottery tickets is owned, serviced and repaired solely by the Commonwealth. If an error was made as a result of a malfunction of the machine, the Commonwealth would (if not immune) be liable for the results flowing from that error. But the Commonwealth is not a party to the action at this stage of the proceeding and, it appears, is probably not liable under Subchapter B of Chapter 85 (relating to matters affecting Government Units) of the Judicial Code, 42 Pa.C.S.A. §§8521-8526.

If the "Tomorrow" key was inadvertently activated by Robinson, then the sole proximate and legal cause of the loss is the failure of plaintiff to inspect her ticket after she purchased it and prior to the drawing of the winning number. If the "Tomorrow" key was not pressed and an improper date was printed on the ticket because the machine malfunctioned, plaintiff was negligent in not inspecting her tickets immediately after purchase; such failure is the sole cause of her loss. This case is not governed by Restatement, 2d, Torts, §402A (relating to strict liability), as plaintiff argues.

A Pennsylvania lottery ticket purchaser must inspect the lottery ticket he has purchased to observe whether the ticket bears the correct date, ticket number and amount wagered. The failure of a purchaser to so inspect, and demand immediate rectification of any error, precludes recovery if errors are discovered after the winning lottery number is drawn.

An appropriate order will be entered.

## ORDER

And now, January 6, 1981, we find in favor of defendant Hill Pharmacy, Inc. and against plaintiff.